**[J-62-2023] [MO: Mundy, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| BOBBI ANN MERTIS AND JOSEPH MERTIS | : | No. 31 MAP 2023 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Superior Court dated August 2, |
| v. | : | 2022, reconsideration denied |
| | : | October 17, 2022, at No. 1547 MDA |
| | : | 2021, Reversing the Order of the |
| DONG-JOON OH, M.D., NORTH | : | Luzerne County Court of Common |
| AMERICAN PARTNERS IN ANESTHESIA | : | Pleas, Civil Division, dated October |
| (PENNSYLVANIA), LLC, WILKES-BARRE | : | 28, 2021 at No. 9655 of 2017 and |
| HOSPITAL COMPANY, LLC D/B/A | : | Remanding |
| WILKES-BARRE GENERAL HOSPITAL | : | |
| AND COMMONWEALTH HEALTH | : | ARGUED: October 17, 2023 |
| | : | |
| | : | |
| APPEAL OF: DONG-JOON OH, M.D. | : | |

**CONCURRING OPINION**

**JUSTICE DONOHUE**                                    **DECIDED: June 18, 2024**

I concur in the result reached by the Majority.

In my view, the Rules of Professional Conduct inform our interpretation of Pennsylvania Rule of Civil Procedure 4003.6 ("Rule 4003.6"). As this Court explained in interpreting Section 303 of the Commonwealth Attorneys Act[1] in *Synthes USA HQ, Inc. v. Commonwealth*, 289 A.3d 846 (Pa. 2023), we do not overlook that the attorneys before the Court are attorneys bound by the Pennsylvania Rules of Professional Conduct ("Pa.R.Prof.C.") when interpreting statutes which squarely address the attorney-client relationship. *Id*. at 864. When addressing the operation of Rule 4003.6 in this case involving an attorney's conduct with regard to protected information from a party's treating

---

[1] 71 P.S. §§ 732-101—732-506 ("CAA").

physician, I would frame the interpretation of Rule 4003.6 by taking into account the conflict of interest and imputation principles embodied in Pa.R.Prof.C. 1.7 and 1.10 ("Rule 1.7" and "Rule 1.10," respectively).

In *Synthes*, we granted oral argument on a direct appeal of a tax determination by the Office of the Attorney General ("OAG") to address, inter alia, the OAG's authority to take a legal position which conflicted with the legal position of the Department of Revenue. *Synthes*, 289 A.3d at 866. The Department advanced one interpretation of a tax provision, while the OAG appeared before the Commonwealth Court and advanced the opposite interpretation. We addressed and interpreted the CAA, which we concluded provides a mechanism for the OAG to take a position on behalf of the Commonwealth contrary to that of an executive branch agency. *Id*. However, we further recognized that the CAA regulated the practice of attorneys related to concurrent representation, a unique type of attorney-client relationship regulated by the Rules of Professional Conduct. We therefore found it "important to frame the conclusion with an eye to the interplay with the Rules of Professional Conduct." *Id*.

As we stated in that case, "[m]embership in the bar of this Court inherently carries with it the obligation of admitted attorneys to consult our promulgated Rules of Professional Conduct to guide their practice. The Rules provide a framework for the ethical practice of law." *Id*. Indeed, the Commonwealth Court expressed discomfort with the OAG's assertion of a legal position directly adverse to its client, the Department of Revenue. *Id*. at 852 n.13 (citing *Synthes USA HQ, Inc. v. Commonwealth*, 236 A.3d 1190, 1202 (Pa. Commw. 2023) (Brobson, J., concurring) (expressing the view that the OAG "overstepped its authority under the [CAA] by assuming the mantles of both counsel and client") (internal footnote omitted)). We observed that the lower court's consternation stemmed "from its understanding of the organic role that the Rules [of Professional

Conduct] play in all of an attorney's professional undertakings." *Id.* at 867. While we recognized that the Rules of Professional Conduct did not establish substantive legal rights in any party, we also recognized "this Court's constitutional authority to oversee the conduct of members of our bar." *Id.* at 866 & n.38. We therefore drew attention to the clear ethical guidance provided by the Rules of Professional Conduct in the scenario presented under the CAA: the OAG, as counsel with two clients (the Commonwealth and the Department of Revenue) with conflicting interests, had the duty to advise the Department of Revenue of the conflict, a result which conformed to both the statutory procedure and the Rules of Professional Conduct. *Id.* at 867.

Likewise, in this case involving the interpretation of Rule 4003.6, where access to the party-patient's medical information depends on the existence of an attorney-client relationship, our analysis should be guided by the organic role of the Rules of Professional Conduct in professional undertakings. We maintain the exclusive authority to supervise the conduct of attorneys. We promulgate both the Rules of Professional Conduct and the Rules of Civil Procedure. It is highly unlikely that, in writing Rule 4003.6, we were addressing attorney conduct in a way that is divorced from the Rules of Professional Conduct.[2] Given that both this discovery rule and the Rules of Professional Conduct are products of this Court's making, this case presents an even more compelling scenario than in *Synthes* for interpreting the discovery rule at issue with reference to the Rules of Professional Conduct.

The discovery rule at issue provides:

---

[2] Rule 4003.6 was never published for comment from the bench, bar or the public. 21 Pa.B. 2337 (May 18, 1991). Unlike most of the Rules of Civil Procedure, it is not accompanied by an historical note or comments to its various provisions. We should refer Rule 4003.6 to the Civil Procedural Rules Committee for its consideration and modification if found necessary after review and public comment.

**Rule 4003.6. Discovery of Treating Physician**

Information may be obtained from the treating physician of a party only upon written consent of that party or through a method of discovery authorized by this chapter. This rule shall not prevent an attorney from obtaining information from:

(1) the attorney's client,

(2) an employee of the attorney's client, or

(3) an ostensible employee of the attorney's client.

Pa.R.C.P. 4003.6.

The first sentence announces a general rule intended to protect from disclosure information about a party-patient held by a treating physician so that such information can only be obtained upon written consent of the party or through an authorized method of discovery. This general rule and its purpose are clear — no consent, no disclosure unless the information is made available through a procedure that allows for the participation of the party-patient's attorney.

The interpretative problem arises from the second sentence of Rule 4003.6: "This rule shall not prevent an attorney from obtaining information from … (1) the attorney's client[.]" The parties as well as the Majority read this as an exception to the general rule. Their reading of this sentence translates to: except that the attorney for a treating physician of a party can obtain information from a treating physician of a party without the written consent of that party and without using an otherwise authorized method of discovery.[3] Thus, in the context of this case, Dr. Oh's retention of Attorneys Doherty, who practiced in the law firm of Scanlon Howley, and Dr Oh's communication of information

---

[3] Having been offered no other interpretation, I will accept this second sentence as creating an exception to the general rule, although this is a lot to take away from the phrase "This rule shall not prevent[.]" Pa.R.C.P. 4003.6. Again, this is the problem with a new rule that was not vetted through public comment. It is also not even clear that the rule came from the Civil Procedural Rules Committee.

about his patient, Mertis, to the attorneys complied with Rule 4003.6, even without Mertis' consent or authorized method of discovery.

The question is whether the law firm of Scanlon Howley, through another of its attorneys Kevin Hayes, may concurrently represent another of Mertis' treating physicians, Dr. Kim, without violating Rule 4003.6. In my view, the answer is no.

Rule 4003.6 would be violated by the concurrent representation of the two treating physicians. As a result of the concurrent representation, Scanlon Howley's attorneys owe a duty of loyalty to both treating physicians to represent both physicians zealously and fully. The problem here is that fulfilling this duty requires counsel to consider the patient's medical information acquired from one physician for the benefit of the other physician's representation. As such, it is inevitable that the confidentiality of the party-patient's medical information is jeopardized by the concurrent representation by the law firm of two treating physicians. *See* Pa.R.Prof.C. 1.10 cmt. [2] (stating that "a firm of lawyers is essentially one lawyer for purposes of the rules governing loyalty to the client … [and] each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated"). Information acquired from Dr. Kim that is helpful to Dr. Oh's defense of the malpractice case against him by Mertis is freely available for use in that defense without the consent of the patient and without resort to authorized means of discovery in which the patient's counsel can participate, in violation of the general prohibition in Rule 4003.6.[4]

The Rules of Professional Conduct contemplate the utilization of screening procedures to allow certain otherwise problematic representations by law firms. The Rules of Professional Conduct explain the procedures and their meaning:

---

[4] Whether the physician-clients of Scanlon Howley waive the conflict of interest under Pa.R.Prof.C. 1.7 arising from their concurrent representation because of their potential adversity is irrelevant to the interpretation of Rule 4003.6.

**Rule 1.0. Terminology**

\* \* \*

(k) "Screened" denotes the isolation of a lawyer from any participation in a matter through the timely imposition of procedures within a firm that are reasonably adequate under the circumstances to protect information that the isolated lawyer is obligated to protect under these Rules or other law.

Pa.R.Prof.C. 1.0(k). However, pursuant to Rule 1.10, screening is only available in limited circumstances and is not permitted to allow problematic concurrent representations. *See* Pa.R.Prof.C. 1.10(b)(1)-(2).

As is evident, my analysis of the exception to the general rule of Rule 4003.6 is dependent upon the imputation of the conflict from one attorney to all of the attorneys in the law firm in which that attorney practices. Rule 1.10 provides in pertinent part:

(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, or 1.9, … [.]

Pa.R.Prof.C. 1.10(a) ("Imputation of Conflicts of Interest: General Rule"). Further, Rule 1.7 provides in pertinent part:

**Rule 1.7. Conflict of Interest: Current Clients**

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

\* \* \*

(2) there is a significant risk that the representation of one or more of the clients will be materially limited by the lawyer's responsibilities to another client, a former client **or a third person** or by a personal interest of the lawyer.

\* \* \*

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent.

Pa.R.Prof.C. 1.7(a)(2) & (b) (emphasis added).

Under Rule 1.10, the concurrent representation of Mertis' treating physicians by Scanlon Howley is a conflict of interest under Rule 1.7(a)(2) because the representation of both treating physicians is materially limited by the lawyers' responsibilities to Mertis who is entitled to protection of information in the possession of her treating physicians.[5] As explained, it is the subsequent retention of Dr. Kim as a client that triggers the violation of Rule 4003.6. The representation of Dr. Kim cannot be salvaged by Rule 1.7(b) because the representation is prohibited by the general rule in Rule 4003.6. *See* Pa.R.Prof.C. 1.7(b)(2) (providing that lawyer may represent a client, notwithstanding a conflict of interest if, inter alia, "the representation is not prohibited by law"). Further, screening procedures cannot be implemented to allow the representation.

Our interpretation of Rule 4003.6, which deals with the consequences of an attorney-client relationship, is informed by the Rules of Professional Conduct. Pursuant to the principles embodied in Rule 1.10, when an attorney practices in a law firm, the consequences of any attorney's representation must be viewed as consequences to the

---

[5] This is in addition to the conflict of interest, irrelevant to Rule 4003.6, that arises from the potential adversity of the two clients.

law firm. Pa.R.Prof.C. 1.10 cmt. [2] ("The rule of imputed disqualification stated in paragraph (a) gives effect to the principle of loyalty to the client as it applies to lawyers who practice in a law firm. Such situations can be considered from the premise that a firm of lawyers is essentially one lawyer for purposes of the rules governing loyalty to the client, or from the premise that each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated[]"). The attorneys defending their approach to representation of Dr. Oh and Dr. Kim under Rule 4003.6 agree that here, the attorneys and their law firms are indistinguishable. Scanlon Howley submits that Rule 4003.6 "provides guidance on when and how **a law firm** may obtain information from a plaintiff's treating physician during discovery." Dr. Oh's Brief at 14 (emphasis added).[6] In defending the concurrent representation of Dr. Oh and Dr. Kim, Scanlon Howley interprets the phrase "the attorney's client" in the exception to Rule 4003.6 as providing that "**a law firm** may communicate with a plaintiff's treating physician where that physician is **a law firm client**." *Id*. at 15 (emphasis added). Scanlon Howley is of the view that "[t]here are no restrictions under this provision with regard to a law firm's ability to communicate with a treating physician in such circumstance." *Id*. But, in promulgating Rule 4003.6, we did not authorize law firms to engage in concurrent representation of treating physicians to access a patient's medical information. Nor did we create an exception to the conflict and imputation principles of Rules 1.7 and 1.10.

The concurrent representation of more than one treating physician by attorneys in a law firm is prohibited because the conflict arising from the patient's confidential medical information provided by two separate clients to an attorney in the firm is imputed to all of the attorneys in the firm. In this case, Rule 4003.6 was violated because the information

_____

[6] Mertis likewise refers to the "law firm, Scanlon Howley" as entering their appearance, Mertis' Brief at 10, and to the law firm satisfying the attorney's client exception, not the individual attorneys, *id*. at 32.

obtained from Dr. Kim was available in the defense of Dr. Oh without the party-patient's consent or through authorized discovery.

I would affirm the Superior Court.